JOHN E. LYNN vs. CHARLES A. NASHAWATY & another.[1]

Middlesex.    December 14, 1979. — July 31, 1981.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Consumer Protection Act*, Availability of remedy. *Practice, Civil*, Findings by judge, Requests for rulings of law.

In an action in which the plaintiff alleged that the owners of a stationery
    store had misrepresented the value of the store's inventory in their sale
    of the store to the plaintiff, a finding that the sale took place "in a
    business context" was not clearly erroneous, and the judge was there-
    fore warranted in making an award of an attorney's fee under G. L.
    c. 93A, § 11. [312-314]
The judge in a civil action, who had complied with the requirements of
    Mass.R.Civ.P. 52(a) in making findings of fact and stating separately
    his conclusions of law thereon, was not required to act upon a party's
    requests for rulings of law.  [314-315]

CIVIL ACTION commenced in the Superior Court on No-
vember 5, 1975.

The case was heard by *Meyer*, J., a District Court judge
sitting under statutory authority.

*Joseph C. Delcore* for the defendants.

*Kenneth A. Behar* for the plaintiff.

ARMSTRONG, J.  By this action the plaintiff seeks recovery
of damages from the defendants on three counts alleging,
respectively, breach of contract, deceit, and violation of
G. L. c. 93A, the Regulation of Business Practice and Con-
sumer Protection Act.  The defendants appeal from a judg-
ment for the plaintiff for $6,300 contract damages, plus in-
terest and costs, and $1,887.50 as an attorney's fee under
G. L. c. 93A, § 11.

---

[1] Antoun K. Nashawaty.

We summarize the facts as found by the trial judge, who heard the case without a jury. In 1974 the plaintiff, who had not previously engaged in retail business, answered a newspaper advertisement with regard to the purchase of a Belmont stationery store owned by the defendants. The defendants, who are brothers, also owned and operated a stationery store in Brookline. The plaintiff discussed the purchase of the Belmont store with the defendants and at one point was told by the defendant Antoun that the wholesale value of the inventory on the premises of the store was approximately $13,000. The parties eventually agreed to the plaintiff's purchase of the business for the price of $21,000, signing a purchase and sale agreement which provided, among other things, that "the Seller represents that there will be approximately $13,000.00 worth of merchandise at wholesale cost price on the premises at the time of the consummation of the sale."

Shortly after assuming management of the store, the plaintiff took a physical inventory of all the merchandise on the premises. He found that the retail value of the existing inventory was $13,415.20. The wholesale value of the inventory, calculated at 50% of the retail value, was approximately $6,700. The plaintiff immediately notified the defendants of the discrepancy between the value of the inventory actually on hand and the value as set forth in the purchase and sale agreement but obtained no satisfaction.

On these facts, the trial judge concluded that the defendants misrepresented the value of the inventory and that this misrepresentation was both a breach of the purchase and sale agreement and an unfair or deceptive act or practice violative of G. L. c. 93A, §§ 2(a) and 11. He declined to find that the misrepresentation was knowing or wilful.

The facts found by the judge were amply supported by the evidence and require the conclusion that, as simple matter of contract law, the plaintiff was entitled to the award of $6,300 to compensate him for the difference between the inventory warranted and the inventory received. The award of an attorney's fee, however, requires us to consider the

applicability of c. 93A, without which the fee could not stand. *Chartrand* v. *Riley*, 354 Mass. 242, 243-245 (1968). *Bournewood Hosp., Inc.* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 303, 311-313 (1976).

General Laws c. 93A, read literally, seems to apply. Section 2(*a*) bars unfair or deceptive acts or practices in the conduct of any trade or commerce. Section 1(*b*), as appearing in St. 1972, c. 123, defines "trade" and "commerce" to include "the sale . . . of any property, tangible or intangible, real, personal or mixed . . . ." Section 2(*c*) authorizes the Attorney General to make rules interpreting the concept of unfair or deceptive acts or practices (which c. 93A leaves undefined), and the Attorney General has promulgated a regulation, § VIIB, 940 Code Mass. Regs. § 3.08(2) (1978), which was put in evidence and which states that "[i]t shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty."[2] That regulation was enforced in *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702 (1975), which held that it was not necessary that a misrepresentation, to violate § 2(*a*) of the Act, be knowledgeably or intentionally false. Id. at 703-704. The literal reading supports the judge's conclusion that the Act applies and that the plaintiff was therefore entitled to the attorney's fee under § 11.

To avoid that conclusion the defendants rely on *Lantner* v. *Carson*, 374 Mass. 606 (1978), in which it was held that § 9 of the Act did not apply to the sale of a house from one private individual to another. "[T]he proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context." *Id.*

---

[2] The definitions section of the Attorney General's regulations, 940 Code Mass. Regs. § 3.01 (24) (1978), defines "warranty" to include "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. Any verbal or written representation . . . which is made part of the basis of the bargain creates an express warranty. It is not necessary . . . that the seller use formal words such as 'warranty' or 'guarantee' or that he have a specific intention to make a guarantee."

at 611, quoting from G. L. c. 93A, § 2(*a*), as appearing in St. 1967, c. 813, § 1. The defendants give *Lantner* an expansive reading: It held, they urge, that the Act does not apply to isolated transactions but only to transactions which occur in the ordinary course of the seller's trade or business. The sale of the business itself, the defendants point out, was not part of the "ordinary course" of their business of selling stationery.

Subsequent to arguments in this case the Supreme Judicial Court decided *Begelfer* v. *Najarian*, 381 Mass. 177 (1980), which held that it is not a requirement of § 11 "that a commercial transaction must take place only in the ordinary course of a person's business or occupation before its participants may be subject to liability under G. L. c. 93A, § 11." *Id.* at 191. What is required is that the isolated transaction take place "in a business context." *Id.* at 190, quoting from *Lantner* v. *Carson*, 374 Mass. at 611. That determination, it was held, must turn on the circumstances of each case, with emphasis on the following factors: "the nature of the transaction, the character of the parties involved, . . . the activities engaged in by the parties . . ., whether similar transactions have been undertaken in the past, whether transaction is motivated by business or personal reasons (as in the sale of a home), and whether the participant played an active part in the transaction." *Id.* at 191.

In the *Begelfer* case the defendants sought to be charged with violating c. 93A were pharmacists who were among several persons or groups that lent varying sums of money to the principals in a large real estate transaction. The defendants' participation was as private individuals making an isolated financial investment, and they had no role in arranging the underlying real estate transaction. It was thus held that their lending activity did not take place in a business context. The stated factors, however, suggest that the transaction involved in the case at bar is more susceptible to being characterized as occurring "in a business context" than those in *Lantner* and *Begelfer*. The sale of a business

or business assets by a businessman is not the same as the sale of a home by an individual homeowner (as in *Lantner*), and the defendants in the present case were fully involved in every aspect of the transaction (unlike the defendants in *Begelfer*), including the false representation which is the core of the alleged c. 93A violation.[3]  In view of the position taken in the *Begelfer* case that an isolated transaction, one that does not take place in the ordinary course of business, may constitute a violation of § 11, so long as it takes place in a business context, it is difficult to avoid the conclusion reached by the finder of fact that the transaction at bar violated that section.  We cannot say that the judge was required as matter of law to reach the conclusion that the sale of the stationery store did not take place "in a business context."  The question in a close case is doubtless largely one of fact, and the judge's finding here was not clearly erroneous.

The defendants next contend that the judge erred by failing to act upon their requests for rulings of law.  His inaction, they assert, constituted an implied denial of each requested ruling, and certain of the requests stated correct principles of law and were not rendered immaterial by findings.  The cases cited by the defendants in support of this line of argument were all actions at law tried without a jury prior to the adoption of the Massachusetts Rules of Civil Procedure in 1974.  The pre-rules practice in actions at law did not require a judge to make express findings of fact. *Matter of Loeb*, 315 Mass. 191, 196 (1943).  His judgment was treated as "import[ing] a finding of every fact necessary to sustain it not expressly negatived." *Id*.  He was required, however, to pass upon requests for rulings of law, for the reasons stated in *John Hetherington & Sons* v. *William Firth Co.*, 210 Mass. 8, 17-19 (1911), and in this way the parties could compel the separation of the law from the facts so that the law might be reviewed.  Superior Court Rules, 1932,

---

[3] It is arguable that they fit well within another of the indicia, having participated, as a family, in two prior sales of stationery stores, although not as sellers, but as buyers.

Ann., note to rule 71, at 200 (Lummus, 1932). The practice in equity was different: there the parties were entitled by statute to have the judge make express findings of the facts material to his decision. G. L. c. 214, § 23, as in effect prior to St. 1973, c. 1114, § 62. G. L. c. 215, § 11, as in effect prior to St. 1975, c. 400, § 58. In an appeal in an equity case requests for rulings of law had no standing, *Restighini* v. *Hanagan*, 302 Mass. 151, 154 (1939); *Farrell* v. *Branconmier*, 337 Mass. 366, 368-369 (1958), and were disregarded. *Wachusett Regional Sch. Dist. Comm.* v. *Erickson*, 353 Mass. 77, 78 n.1 (1967), and cases cited. In practice under the Massachusetts Rules of Civil Procedure, a judge is required in each case to make express the findings of fact which underlie his decision and to state separately his conclusions of law thereon. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Contrast Dist.Mun.Cts.R.Civ.P. 52(a); Mass. R.Dom.Rel.P. 52(a). See *Cormier* v. *Carty*, 381 Mass. 234, 236 (1980); *Bruno* v. *Bruno*, 384 Mass. 31, 35-36 & n.7 (1981); *Markell* v. *Sidney B. Pfeifer Foundation, Inc.* 9 Mass. App. Ct. 412, 415-416 (1980). The findings required by Mass.R.Civ.P. 52(a) serve the same functional purpose as the statutory report of material facts in the earlier equity practice. Where a judge complies, as the judge did in this case, with the requirements of rule 52(a), the thought process which led to his decision is fully articulated. In these circumstances responses to requests for rulings are superfluous. *Restighini* v. *Hanagan, supra.*[4]

The defendants' other arguments are without merit. The admission in evidence of the unsigned copy of the agreement was harmless, as it was admitted by the defendants' answer that there was such an agreement and that it contained the

---

[4] We do not read *DiGesse* v. *Columbia Pontiac Co.*, 369 Mass. 99, 106 (1975), as requiring judges to act on requests for rulings of law in cases governed by the Massachusetts Rules of Civil Procedure, but merely as reiterating that, regardless of the applicable procedure, a judge who erroneously rules that the evidence does not warrant a finding for the losing party invites reversal unless he makes clear in some way that his finding for the winning party is independent of the incorrect ruling of law.

provision requiring them to turn over to the plaintiff approximately $13,000 worth of inventory at wholesale. There was no error in the determination of the amount of the counsel fee. The denials of the motions for a new trial and for amended findings were well within the judge's discretion. The apparent clerical error in the issuance of the real estate attachment should have been addressed in the first instance to the trial judge, who authorized the attachment.

*Judgment affirmed.*