## EUGENE D. SZALLA *vs.* SIMEON LOCKE.

No. 92-P-1373.

Essex. December 6, 1993. - September 28, 1994.

Present: BROWN, PERRETTA, & JACOBS, JJ.

Further appellate review granted, 419 Mass. 1102 (1994).

*Practice, Civil*, Directed verdict, Judgment notwithstanding verdict, Instructions to jury. *Damages*, Quantum meruit, Breach of partnership agreement, Consumer protection case. *Contract*, Performance and breach. *Consumer Protection Act*, Damages, Businessman's claim, Trade or commerce, Unfair act or practice. *Fraud*. *Partnership*, Dissolution.

In a civil action in which the defendant failed to renew his motion for a directed verdict at the close of all the evidence, the record did not demonstrate that the jury's verdict for the plaintiff was inconsistent with substantial justice. [350-351]

After the trial of an action for breach of a partnership agreement in which the defendant asserted a counterclaim for breach of the agreement, the defendant was not entitled to assert for the first time on appeal that his motion for directed verdict should have been allowed on the basis that he had a lawful right to dissolve the partnership. [350-351]

In a civil action damages awarded by the jury on the plaintiff's claim for breach of a partnership agreement and his claim in quantum meruit were discrete and not duplicative considering the evidence and in light of the judge's instructions. [352]

A party to a civil action who did not raise the issue of inconsistent verdicts before the jury were discharged could not raise the issue on appeal. [353]

Sufficient evidence at the trial of a G. L. c. 93A, § 11, claim supported the judge's determination that the defendant's misrepresentations to the plaintiff constituted a violation of c. 93A, such that the plaintiff was entitled single damages and an award of reasonable attorney's fees and costs. [353-354]

In the circumstances of a business relationship between two independent businessmen dealing with each other at arm's length in a commercial context, there was no formation of a partnership, such as would take outside the reach of G. L. c. 93A, § 11, the claim by one party that the other had deceived him. [354-356]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1988.

The case was tried before *Peter F. Brady*, J.

*Thomas G. Hoffman* for the defendant.

*Victoria A. Casey* for the plaintiff.

PERRETTA, J. After a trial on claims arising out of the parties' attempt to start a retail nursery business together, the jury returned verdicts in favor of the plaintiff on those counts of his complaint seeking damages for deceit and breach of a partnership agreement and recovery in quantum meruit.[1] The Superior Court judge made his own findings on the plaintiff's claim under G. L. c. 93A, § 11. He found that the defendant had been deceptive, concluded that his acts were comprehended by § 11, and awarded the plaintiff reasonable attorney's fees and costs. The issues before us on appeal are whether the trial judge erred in denying the defendant's motion for judgments notwithstanding the verdicts and whether the plaintiff's claim is a dispute between partners and outside the reach of § 11.[2] Concluding that there is no basis for disturbing the jury verdicts and that the unfair act was within the purview of § 11, we affirm the judgments.[3]

1. *The evidence.* There was evidence to show that for about four years after his 1965 purchase of the Highlands Nursery (Highlands) in Boxford, the defendant conducted a wholesale and retail nursery business with the assistance of his wife and a field hand. The business made a profit in only

---

[1]There were separate verdict slips for each count of the plaintiff's complaint. The damages awarded the plaintiff were in the amounts of $2,000 (deceit), $20,000 (breach of the partnership agreement), and $30,000 (quantum meruit).

[2]The defendant's notices of appeal concern numerous orders entered in the Superior Court and judgments for a person not party to this appeal. The only judgments and orders addressed by this court are those raised in the defendant's brief; all other issues have been waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[3]Consistent with *Wolfberg* v. *Hunter*, 385 Mass. 390, 400-401 (1982), judgment entered on the plaintiff's claim under c. 93A and provided for a single recovery in the amount of $52,000. Subsequent to the entry of the judgment, the trial judge allowed the plaintiff's motion for reasonable attorney's fees and costs.

one year and the retail portion of the business was discontinued until 1986. At that time, the defendant's neighbor, Rick Heywood, built a retail greenhouse on the property under an arrangement with the defendant who paid half the cost of construction. He and Heywood then operated a retail business in which they shared equally in the profits and losses. That business was abandoned in July, 1987.

One evening in September, 1987, the defendant and his wife made a social call upon another neighbor, the plaintiff. Impressed with the deck and landscaping that the plaintiff had designed and constructed, the defendant broached with the plaintiff the possibility of a partnership in the retail nursery business. The plaintiff agreed to think the matter over and get back to the defendant within two weeks. His enthusiasm for the project prompted him to return to the defendant within four or five days to tell him that he wished to join him in the nursery enterprise. He immediately began drawing designs for the greenhouse and an attached shed. When he again met with the defendant two weeks later, he brought his drawings with him. From October through January, 1988, the parties had numerous meetings and discussions concerning the development of the business.

Throughout this period, the plaintiff and the defendant negotiated the terms of their business arrangement. The retail enterprise was to be known as Boxford Gardens at Highlands Nursery (Boxford Gardens). Highlands was to pay, without reimbursement, all costs of renovation of the greenhouse and shed. The plaintiff was to supply, without pay, all the labor. Until Boxford Gardens generated income, Highlands would pay the cost of its inventory and operating expenses. Highlands was also to absorb all Boxford Gardens' losses until there was income and profits, which were to be shared equally.[4] Although both partners would make all major policy decisions, the plaintiff was to be in charge of the day-to-day operation of the business which, as of the 1988 Easter

---

[4]There was evidence from which it appeared that Highlands' losses provided the defendant with some relief from the burdensome tax consequences of the income he earned as a physician.

weekend, would be open seven days a week from April through December. The defendant was to give the plaintiff a right of first refusal to buy the business should he (the defendant) and his wife retire or die. Neither the terms of the business agreement nor of the right of first refusal were ever reduced to writing. In January of 1988, the plaintiff and the defendant viewed the terms of their association as set. They met with a certified public accountant and filled out an application for an employer identification number in which they indicated to the Internal Revenue Service that their business was a partnership.

Although there was an understanding between the parties that Boxford Gardens was to open for Easter business on April 1, 1988, that anticipated opening date never had been critical until the last week in March. On March 26, the defendant became insistent that the nursery open for business on the following Friday. At that time, the renovations were almost complete. However, some work remained to be done, and the plaintiff complained that he was tired and sore from all that he had been doing and that he could not concentrate on finishing the renovations if he also had to attend to customers. Viewing these complaints as less than manly, the defendant lost his temper and made certain derogatory remarks to the plaintiff. Those remarks caused the plaintiff to become considerably upset and to believe that the defendant was ending their business association. He asked if he could keep the keys to the greenhouse until the next day so that he might remove his tools and other belongings from the premises. The defendant, also believing his association with the plaintiff to be at an end, assented.

Boxford Gardens, after many hours of work by the defendant and his wife, opened on the defendant's schedule but did little business over the Easter weekend. Thereafter, however, Boxford Gardens became, and remained as of the time of trial, a viable retail garden center owned and operated by the defendant and his wife.

2. *The jury verdicts*. Arguing that a partner has the lawful right to dissolve at any time an at-will partnership of indefi-

nite duration, see *Johnson* v. *Kennedy*, 350 Mass. 294, 298 (1966), and *Doiron* v. *Castonguay*, 401 Mass. 705, 707 (1988), the defendant claims that it was error to deny his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). The defendant cannot, however, assert this claim on appeal for the following reason.

At the close of the plaintiff's case, the defendant moved for a directed verdict on the specific ground that the evidence was insufficient to prove a wrongful termination of the partnership agreement. The trial judge denied the motion which was not renewed at the close of the defendant's case.[5] "Failure to renew the motion . . . generally results in a waiver of the right to assert error in the denial of a directed verdict. *Martin* v. *Hall*, 369 Mass. 882, 884-885 (1976). It also results in a waiver of the right to appeal the denial of the [defendant's] subsequent motion for a judgment notwithstanding the verdict. See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974); *Sears* v. *Pauly*, 261 F.2d 304, 306-307 (1st Cir. 1958)." *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 9 (1983).

There is authority for the proposition that notwithstanding a failure to renew the motion for a directed verdict, a "new trial may be granted where 'a jury's verdict is wholly without legal support . . . in order to prevent a *manifest injustice*' [emphasis supplied]." *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 362 (1987), quoting from *Sojack* v. *Hudson Waterways Corp.*, 590 F.2d 53, 54-55 (2d Cir. 1978). We, however, see nothing in the record before us that requires the conclusion that the verdict is "inconsistent with substantial justice." *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. at 9.

In responding to the complaint, the defendant did more than deny the plaintiff's claim that he committed a breach of the partnership agreement. He went on to assert a counterclaim in which he detailed the terms of the partnership

---

[5]Appellate counsel was not trial counsel.

agreement and alleged that the plaintiff himself committed specifically described acts in breach of that agreement. After his motion for a directed verdict was denied, the defendant then went forward to present evidence to the effect that the plaintiff was in breach of the partnership agreement when he refused to open Boxford Gardens for Easter business and, instead, renounced his association with the defendant and left the premises with his belongings. His testimony was important to the outcome on both the plaintiff's complaint and his counterclaim. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. at 9. The jury were instructed to apply the same principles of law in deciding both the plaintiff's claim and the defendant's counterclaim for breach of the partnership agreement. The defendant took no objection to the instructions that were given.[6]

In short, the basis upon which the defendant currently argues that he was entitled to a judgment notwithstanding the verdict, namely, that he had a lawful right to dissolve the partnership, was not the defendant's theory of the case at trial. Rather, it was the defendant's trial strategy to claim that it was the plaintiff, and not he, who was in breach of the partnership agreement. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956). *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 n.25 (1991). In these circumstances, we conclude that the verdict is not inconsistent with substantial justice.[7]

---

[6]Although the defendant did not object to the trial judge's instructions concerning the claim and counterclaim for breach of the partnership agreement, he did object to the trial judge's refusal also to instruct: "If you find that an oral partnership agreement existed and that the agreement did not specify the life or duration of the partnership, the plaintiff's claim for breach of the partnership agreement must fail because Simeon Locke had the lawful right to dissolve a partnership at will of indefinite duration."

[7]Based upon these same circumstances, we also conclude that the trial judge was not in error in refusing to instruct in accordance with the defendant's request set out in note 6, *supra*.

Because the jury also awarded the plaintiff damages on his claim in quantum meruit, the defendant argues that the damages awarded for breach of the partnership agreement are cumulative.[8] "Permitting awards under several counts where claims and injuries are factually distinguishable, but disallowing such recovery where they are not, will serve to avoid over or under compensation." *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 236 (1984).

There was evidence to show that the fair and reasonable value of the plaintiff's services in designing and remodeling the greenhouse in preparation of the opening of Boxford Gardens was about $42,000. There was also evidence to show that the defendant told the plaintiff that when Heywood was operating the nursery, he (Heywood) made $26,000, and that he (the defendant) believed that he and the plaintiff could make about $75,000 a year. The jury was instructed that if they found that the plaintiff was entitled to recover in quantum meruit, the measure of damages would be the fair and reasonable value of his services. As for the claim of breach of the partnership agreement, the trial judge instructed the jury that where there is a breach of contract, the injured party is entitled to be put in the same position as if no wrongdoing had occurred. Because the defendant took no objection to these instructions, he is bound by them. See *Button* v. *Crowley*, 284 Mass. 308, 313 (1933); *Dunbar* v. *Ferrera Bros., Inc.*, 306 Mass. 90, 93 (1940); *Laveck* v. *Pascoe Pizza, Inc.*, 29 Mass. App. Ct. 935, 937-938 (1990). Considering the evidence and viewing the jury's verdicts in light of the trial judge's instructions, which we presume they followed, see *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 870 (1993), we conclude that the damages awarded in quantum meruit and for breach of the partnership agreement were discrete and not duplicative.

---

[8]The defendant's fleeting reference in his brief to the damages awarded on the count for deceit does not constitute argument that those damages are duplicative of the damages awarded for breach of the partnership agreement and quantum meruit. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 642 (1987).

Although the jury found for the plaintiff on his claim of breach of the partnership agreement, they found for the defendant on the counts alleging a breach of an express or implied contract. We do not consider the defendant's argument that these findings are factually inconsistent. Even were there force to his assertion, "[t]his issue should have been raised before the jury were discharged and when there was time to correct the verdicts." *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 573 (1986).[9]

3. *The c. 93A claim.* An action for damages may be brought pursuant to c. 93A, § 11, as amended through St. 1986, c. 363, § 1, by "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice declared unlawful by [c. 93A, § 2.]" In deciding the plaintiff's claim under c. 93A, the trial judge concluded that the defendant had been "if not wilfully deceitful, at least negligent" in making various misrepresentations to the plaintiff.

That conclusion was based upon findings that although the defendant knew of the plaintiff's enthusiasm for the nursery project, he was fully aware that his prior attempts to make a go of the retail nursery business had been "less than successful," that he was motivated to operate Boxford Gardens at a loss for tax reasons, and that he "made no affirmative effort to reconcile those divergent facts." Moreover, when the plaintiff asked if he could examine the books and records of the nursery under Heywood's management, the defendant represented that there were no records and that Heywood "was a slob and never kept books." The defendant, however, had been able to furnish his accountant with sufficient infor-

---

[9]Although the defendant did ask that inquiry be made of the jury before they were discharged, the transcript establishes that the defendant sought only to have the jury asked whether they intended that their award of damages on the breach of the partnership claim be inclusive of, or in addition to, the damages awarded in quantum meruit. The trial judge denied the defendant's request, stating that those verdicts spoke for themselves, the defendant said no more, and the jury was discharged.

mation for tax purposes about the business under Heywood's management. Contrary to the defendant's argument, there is evidence to support these findings.

Although the trial judge found the defendant's conduct sufficiently deceptive to constitute a violation of c. 93A, he also found that the violation was not egregious enough to entitle the plaintiff to more than a single recovery of damages and reasonable attorney's fees and costs. Whether the award of counsel fees can stand depends upon whether the present controversy is within the scope of c. 93A.

It is the defendant's argument that his agreement with the plaintiff was private in nature and outside the scope of c. 93A. "[A]s a matter of statutory construction . . . § 11 was intended to apply only to dealings between legally separate 'persons' engaged in arm's length transactions, and not to dealings between members of a single legal entity like a partnership." *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 467 (1982). See also *Zimmerman* v. *Bogoff*, 402 Mass. 650, 662-663 (1988), and cases therein cited.

*Newton* v. *Moffie*, 13 Mass. App. Ct. at 469-470, emphasizes that "whether a defendant's conduct is actionable in a particular case . . . will depend on a careful analysis of the particular 'circumstances of each case.' *Begelfer* v. *Najarian*, 381 Mass. 177, 191 (1980)." As found by the trial judge, both parties "actively participated in readying Boxford Gardens for business," and both were motivated by "business reasons," including, for the defendant, tax planning. The defendant was found by the trial judge to have a "stronger, more forceful personality" than the plaintiff as well as more experience in the nursery business: Boxford Gardens was the defendant's "third retail garden center endeavor." These findings support the trial judge's conclusion that the transaction occurred in a "business context." *Begelfer* v. *Najarian*, 381 Mass. at 190. See also *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 314 (1981).

Moreover, the trial judge found that the defendant had offered his property and the plaintiff his services for the purposes of developing a commercial enterprise. Chapter 93A,

§ 1(*b*), as amended through St. 1987, c. 664, § 1, provides, as here relevant, that " '[t]rade' and 'commerce' shall include the . . . distribution of any services and any property, tangible or intangible, real, personal or mixed . . . and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." The transaction between the parties involved trade or commerce. Compare *Newton* v. *Moffie*, 13 Mass. App. Ct. at 466.

Finally, the trial judge concluded that the parties' partnership was not the type of business arrangement that would shelter the defendant from § 11 liability to the plaintiff.[10] For a somewhat different reason, we also conclude that the defendant is subject to § 11 liability. As pleaded by the plaintiff in those counts of his complaint that allege deceit and violations of § 11, the defendant, during the fall of 1987, made misrepresentations to the plaintiff concerning the formation of a business enterprise which would entitle the plaintiff to operate a retail nursery in partnership with him and that the defendant made those representations for the sole purpose of inducing the plaintiff to provide services, i.e., the renovation of the greenhouse and shed.

There is no express finding to the effect that the defendant never intended to enter into a partnership with the plaintiff. However, we think it obvious from all the findings that the trial judge concluded that the defendant was deceptive in deliberately withholding from the plaintiff the fact that he did not care if the partnership failed because he believed that such failure would reduce his tax burden while, simultaneously, the plaintiff would have made improvements to his property and that the defendant withheld this information from the plaintiff to induce him to enter into the partnership.

---

[10]Because the parties' agreement provided that Highlands was to absorb all Boxford Gardens' losses until the enterprise had income and profits, the trial judge concluded that the enterprise was not a true partnership. He did not regard his view of the partnership to be in conflict with the jury's finding of a breach of the partnership agreement because he also concluded that their finding, which was advisory in any event, was "based upon a layman's understanding of the term 'partnership.' "

These findings show that the misrepresentations took place before formation of the partnership. At that time, the plaintiff and the defendant were two independent businessmen dealing with each other at arm's length in a commercial context and in the public arena. See *Bio-Vita, Ltd.* v. *Rausch,* 759 F. Supp. 33, 35-36 (D. Mass. 1991). See also *Lynn* v. *Nashawaty,* 12 Mass. App. Ct. at 313-314. Compare *Manning* v. *Zuckerman,* 388 Mass. 8, 11-13 (1983). The defendant is, therefore, liable under c. 93A for his deception of the plaintiff.

*Judgments affirmed.*