KNAPP SHOES, INC. *vs.* SYLVANIA SHOE MANUFACTURING CORPORATION.

Suffolk. February 9, 1994. - October 13, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Regulation. Administrative Law*, Regulations. *Attorney General. Consumer Protection Act*, Warranty, Unfair or deceptive act, Trade or commerce, Consumer, Businessman's claim. *Statute*, Construction.

This court concluded that 940 Code Mass. Regs. § 3.08, and specifically § 3.08 (2), promulgated in 1991 by the Attorney General under G. L. c. 93A, § 2 (*c*), before § 11 was added to G. L. c. 93A by St. 1971, c. 14, § 2, was not intended to, and does not, afford a basis for imposing liability in contract disputes between businessmen, brought pursuant to G. L. c. 93A, § 11, alleging breach of the implied warranty of merchantability. [743-747] O'CONNOR, J., concurring.

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Timothy C. Blank* (*Bernard J. Bonn, III*, with him) for the plaintiff.

*Joseph B. Green* for the defendant.

GREANEY, J. A judge of the United States District Court for the District of Massachusetts has certified two questions to this court pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). The questions, concerning the application of a regulation promulgated by the Attorney General under G. L. c. 93A, § 2 (*c*) (1992 ed.), to a business dispute, are as follows:

"Do the provisions of 940 [Code Mass. Regs. § 3.08 (2)] apply to a simple breach of warranty in the circumstances described [in this order], that is, during the

course of fulfilling a requirements contract entered into by persons engaged in the conduct of trade and commerce having equal bargaining power and business acumen, during which the breach consisted simply of the delivery of a minute portion of non-conforming goods?"

"If so, is that regulation consistent with the legislative mandate set forth in [G. L.] c. 93A, § 2(c) that such regulations promulgated by the Attorney General '. . . shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. []§ 45(a) (1) (The Federal Trade Commission Act), as from time to time amended.'?"

We answer the first question, "no," and, consequently, do not reach the second question.

The certified questions relate to an action brought in the United States District Court by the plaintiff, Knapp Shoes, Inc. (Knapp), against the defendant, Sylvania Shoe Manufacturing Corporation (Sylvania). In the memorandum of certification, and a memorandum and order prepared at the conclusion of the liability phase of the case (which was tried to the judge without a jury by consent of the parties), the judge found and concluded as follows.[1]

---

[1]We comment briefly on two background matters. First, neither the order of certification nor the memorandum and order contain a statement of facts "fully showing the nature of the controversy in which the question arose." S.J.C. Rule 1:03, § 3 (2), as appearing in 382 Mass. 700 (1981). The record before us is sketchy and leaves unresolved certain factual questions in dispute between the parties. In these circumstances, we would be justified in declining to answer the questions certified to us. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 372 (1990). Nevertheless, we are satisfied that the first question raises a significant issue, and that we can, and should, answer it. In doing so, we assume the evidentiary record supports the judge's pertinent factual findings and legal conclusions.

Second, following oral argument in this court, the United States Court of Appeals for the First Circuit vacated an order of the judge dissolving a preliminary injunction in favor of Knapp which effectively froze assets of Sylvania for the purpose of protecting any judgment Knapp might obtain. See *Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222 (1st

Sylvania and Knapp were found by the judge to be "persons of equal bargaining power, equal sophistication, and equal business acumen." Sylvania had agreed to manufacture shoes meeting certain specifications for Knapp pursuant to purchase orders, so that Knapp might resell them. The judge found that, "[d]uring the course of the dealings between the parties, sole adhesion defects appeared with some degree of frequency. Eventually, Knapp terminated its relationship with Sylvania, and instituted [the United States District Court] action."

According to Knapp, there was evidence at trial that a defect rate of one percent is acceptable in the shoe manufacturing industry. The judge found that three percent of the shoes manufactured for Knapp by Sylvania were defective. He further found that the defect in the shoes was due to a problem "not reasonably foreseen by any of the parties to the relationship," and that Sylvania, "in an attempt to fulfill its part of the bargain, acted tirelessly and in the utmost good faith to correct the perceived sole adhesion defects." The judge also concluded that Sylvania did not act "in an 'unfair' manner — no matter what interpretation might be given to the word, 'unfair.' " On this basis, Knapp's claims of fraud, misrepresentation and for multiple damages pursuant to G. L. c.

---

Cir. 1994). In dissolving the injunction, the judge relied on his finding that "the parties had agreed to limit their remedies under the contract to return and replacement or credit for defective shoes." *Id.* at 1225. The Court of Appeals concluded that Sylvania had waived reliance on any such agreement by failing to raise it as a defense in a timely fashion. *Id.* at 1227. In certifying questions to this court, the judge assumed that any agreement between the parties which limited remedies did not foreclose Knapp from seeking remedies based on a violation of G. L. c. 93A. Cf. *Canal Elec. Co. v. Westinghouse Elec. Corp., supra* at 377-379 (a party engaged in trade or commerce could validly waive its G. L. c. 93A remedies by agreeing to a limitation on remedies in event of a breach of contract). As the certified questions do not depend on the existence, or the effect, of a limitation of remedies agreement between the parties, the Court of Appeals' decision does not render the questions moot. It is clear, however, that Sylvania may not rely on any such agreement as a defense to Knapp's claim under G. L. c. 93A.

93A were rejected.[2] Based on the defect rate of three percent, however, the judge concluded that "Sylvania did breach implied warranties."[3]

We next set out the statutory provisions and regulations involved in this dispute. General Laws c. 93A, § 2 (*a*) (1992 ed.), makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The legislation contains no definition of unfair or deceptive acts or practices. By language in § 2 (*c*) of G. L. c. 93A, the Attorney General is authorized to make rules and regulations "identify[ing] particular business practices as falling within [the scope of § 2 (*a*)]." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 771 (1980).

In 1971, the year before § 11[4] was added to G. L. c. 93A by St. 1971, c. 14, § 2, the Attorney General promulgated

---

[2]Although Knapp's claim for multiple damages has been rejected, it would be entitled to recover a reasonable attorney's fee if Sylvania is found to have violated G. L. c. 93A. See note 4, *infra*. See also *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, *supra* at 378-379 (claim under G. L. c. 93A based on breach of warranty is duplicative of contract-based breach of warranty claim; in absence of wilful misconduct, successful G. L. c. 93A plaintiff only entitled to attorney's fees). An award of attorney's fees may, of course, represent a significant item in a plaintiff's recovery.

[3]The Commonwealth's version of the Uniform Commercial Code, G. L. c. 106, § 2-314 (1992 ed.), provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." To be merchantable, goods must, among other things, be "fit for the ordinary purposes for which such goods are used." G. L. c. 106, § 2-314 (2) (*c*). As a manufacturer of shoes, Sylvania is a merchant within the meaning of § 2-314. Shoes from which the soles readily detach are not fit for use as footwear, and, thus, are not merchantable. The record before us supports the conclusion that Sylvania's performance was at least in breach of the implied warranty of merchantability.

[4]General Laws c. 93A, § 11 (1992 ed.), provides, in pertinent part:

"Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an . . . unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may . . . bring an action . . . for damages and such equitable relief . . . as the court deems to be necessary and proper. . . . If the court finds in any

regulations pursuant to G. L. c. 93A, § 2 (*c*), including the regulation now codified at 940 Code Mass. Regs. § 3.08. Appearing under the general heading of "Repairs and Services Including Warranties and Service Contracts," that lengthy regulation provides, in full, as follows:

"(1) *Repairs and Services.* It shall be an unfair and deceptive act or practice to:

(a) Fail to provide in advance to a customer upon request a written estimate of the cost to the customer of the anticipated repairs, or the basis upon which the charge to the customer will be made and the reasonably expected time to accomplish such repairs, including any charge for reassembly of any part disassembled for inspection or any service charge to be imposed;

(b) Make or charge for repairs which have not been authorized by the customer;

(c) Fail to disclose, in the case of an in-home service call where the consumer has initially contacted the repairman, that a service charge will be imposed even though no repairs are effected, before the repairman goes to the consumer's home;

(d) Represent that repairs are indicated to be necessary when such is not a fact;

(e) Represent that repairs have been made when such is not a fact;

(f) Represent that the goods being inspected or diagnosed are in a dangerous condition or that the customer's continued use of them may be harmful to him when such is not a fact;

---

action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in such action."

(g) Materially understate or misstate the estimated cost of repair services.

(h) Fail to provide the customer with an itemized list of repairs performed and the reason for such repairs including:

1. A list of parts and statement of whether they are new, used, or rebuilt and the cost thereof to the customer; and

2. The number of hours of labor charged and the name of the mechanic performing the service; provided, however, that the requirements of 940 CMR 3.08(1)(h) shall be satisfied by the statement of a flat rate price if such repairs are customarily done and billed on a flat rate price basis.

"(2) *Warranties*: It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty. The utilization of a deceptive warranty is unlawful.

Language intended to limit or modify the warrantor's obligations under a warranty shall not operate to limit the warrantor's liability, notwithstanding the limiting language, if the warrantor fails to perform under the warranty, provided, however, that no language of limitation otherwise unenforceable by statute or regulation shall be enforceable. This regulation in no way limits, modified, or supersedes any other statutory or regulatory provisions dealing with warranties.

"(3) *Service Contracts*. It shall be an unfair and deceptive trade practice to fail to disclose in writing, fully and conspicuously, in simple and readily understandable language that a service contract charge will be imposed if the consumer wishes to insure that repairs will be made to a purchased product so that it will operate properly. It shall also be an unfair and deceptive trade practice to fail to disclose in writing, fully, clearly, and conspicuously, in simple and readily understandable

language that a consumer is paying a lower price for goods or services in exchange for a waiver of his warranty rights."

Knapp, of course, relies on the first sentence of subsection (2) of the regulation, which addresses the failure to honor warranty obligations.

The first certified question requires us to consider whether subsection (2), which was promulgated at a time when G. L. c. 93A protected only consumers from unfair or deceptive trade practices, should be applied to every breach of warranty claim made by a person or entity engaged in trade or commerce in connection with an action brought under G. L. c. 93A, § 11.[5] We have not had occasion to consider this question directly, although we acknowledge that decisions of this court and the Appeals Court appear to have assumed that subsection (2) applies to every case alleging a breach of warranty brought under G. L. c. 93A, § 11. See *Linthicum* v. *Archambault*, 379 Mass. 381, 387-388 (1979); *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 312 (1981). For the reasons now explained, we conclude that the regulation was not intended to, and does not, apply to cases brought under § 11, alleging a breach of warranty.

Knapp contends that the delegation of authority to the Attorney General by G. L. c. 93A, § 2 (*c*), to develop regulations defining unfair and deceptive practices, considered with the plain language of subsection (2) (which refers to "any" promises or obligations arising under a warranty), and the fact that § 11 "did not limit its incorporation of the Attorney General's rules and regulations to those issued after § 11 came into effect," compels the conclusion that subsection (2)

---

[5]We stress that this case concerns a breach of warranty claim seeking contract-based recovery for economic losses, and not a claim for damages based on physical injuries allegedly caused by a defective product, an area of law in which different principles may apply. See *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 108-111 (1989).

applies to Sylvania's performance under the contract. We reject the argument.

As has been previously noted, 940 Code Mass. Regs. § 3.08 (2) was promulgated when G. L. c. 93A protected consumers, but not persons engaged in trade or commerce, from unfair or deceptive acts or practices. An examination of the entirety of § 3.08 discloses that subsection (2) is one of three subsections addressing the obligations of a person engaged in trade to repair or service goods. Subsections (1) and (3), which address, respectively, repairs and services and service contracts, use the term "consumer" to denote the persons protected by their provisions,[6] and concern matters generally involved in consumer transactions. (These matters include, for example, the obligations to provide the customer with a written and accurate estimate of the anticipated cost of repairs, and a prohibition on charging for repairs which the customer has not authorized, or representing, untruthfully, that the goods being inspected are in such a dangerous condition that they should not be used prior to repair.)

Subsection (2) addresses only the failure to comply with promises or obligations arising under a warranty, and contains no language denoting the persons protected thereunder. Language in a regulation, like language in a statute, see *Purity Supreme, Inc.* v. *Attorney Gen., supra* at 776; see also 1A Singer, Sutherland Statutory Construction § 31.06 (5th ed. 1993), "must be considered in light of the other words surrounding [it]," *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974), and its scope and meaning must be determined by reference to context. See *Commonwealth* v. *Kwiatkowski*, ante 543, 548 n.6 (1994). See also *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) ("The general and familiar rule is that a [regulation] must be interpreted according to the intent of [the officer or agency responsible for its promulgation] ascertained from all its words construed

---

[6]Section 3.08 (1) uses the terms "consumer" and "customer" apparently interchangeably.

by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated").

It is reasonably clear that, in drafting the regulation, the Attorney General had in mind protection for consumers against unfair or deceptive acts or practices that had come to the attention of his office in connection with shoddy repairs, inadequate and misleading service contracts and the grant of worthless warranties. The regulation, read as a whole, is rooted in § 9 of G. L. c. 93A. Where the bulk of the regulation applies only to consumers and their interests, and subsection (2) contains no language suggesting that it was meant to apply to a broader class of persons or interests, we conclude that the portion of subsection (2) at issue was not intended to encompass a contract dispute between businessmen based on a breach of the implied warranty of merchantability.[7] We note, as well, that commentators have reached a similar conclusion.[8]

---

[7] As was previously noted, the decisions in the *Linthicum* and *Nashawaty* cases appear to assume that the regulation, 940 Code Mass. Regs. § 3.08 (2), applies in cases brought under G. L. c. 93A, § 11. In neither of those cases did the parties question whether the regulation was applicable. The major issue related to G. L. c. 93A in the *Linthicum* case was whether the plaintiff qualified as a "consumer" as that term is defined in G. L. c. 93A, § 9. See *Linthicum* v. *Archambault*, 379 Mass. 381, 385 (1979). In the *Nashawaty* case, the parties disputed whether the challenged transaction had occurred in a business context. See *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 312 (1981).

To the extent, however, that the *Linthicum* decision stands for the proposition that 940 Code Mass. Regs. § 3.08 (2) applies in cases brought under § 11 alleging a breach of warranty, we no longer follow it, nor should the *Nashawaty* decision be relied on for this point.

[8] See M.C. Gilleran, The Law of Chapter 93A, § 9:1, at 234-235 (1989); Golann, "Evolution of Chapter 93A: National and Local Authority," in Chapter 93A Rights and Remedies 1-1, 1-6 (J.M. Greaney, ed. 1989, Supp. 1992)("Significantly, the attorney general has rarely intervened in business-to-business disputes, other than through cases filed under the Massachusetts Antitrust Act, G. L. c. 93. Indeed, the attorney general promulgated the General Regulations under Chapter 93A in 1971, before Section 11 was added to the Statute. Those regulations were never in-

This interpretation of the regulation comports with its historical development, see *Wilcox* v. *Riverside Park Enter., Inc.*, 399 Mass. 533, 535 (1987), and with Federal law in the area of unfair or deceptive acts or practices. As the judge has pointed out (and as Knapp concedes), "neither the Federal Trade Commission, nor any [F]ederal court interpreting [15 U.S.C. ]§ 45 (a) (1) [1988,] has ever concluded a breach of warranty, as between persons engaged in trade within the meaning of G. L. c. 93A, § 11, and as distinguished from consumers within the meaning of G. L. c. 93A, § 9, constitutes a 'deceptive' or 'unfair' act or practice."[9] While the Attorney General properly could define as "unfair" or "deceptive" acts or practices not prohibited by the Federal Trade Commission, he is directed to seek guidance from Federal law in determining what constitutes an unfair or deceptive act or practice. That the commission has distinguished between a consumer's and a businessman's breach of warranty claims is a further indication that the Attorney General likewise intended to do so. Because subsection (2), considered in the context of the entire regulation, is most plausibly read as protecting only consumers, there is no basis for presuming that the Legislature intended its incorporation when § 11 was added to G. L. c. 93A.

While we conclude in this decision that the regulation does not afford a basis for imposing liability in a § 11 case, we do not mean to suggest that the breach of an implied warranty,

---

tended to apply to Section 11 disputes, and they have never been revised to deal with commercial transactions"); Bartenstein, Recent Developments in Commercial Warranty Law: *Bay State* and *Canal Electric*, 35 B.B.J. 4, 11 (May/June 1991). See also Golann, "Standards of Conduct Under Chapter 93A: What is a Section 11 Violation?," in Multiple Damage Claims in Business Litigation 1, 4-13 (1993) (noting that the Attorney General's regulations were not drafted for application to commercial disputes, although they have been so applied).

[9]The cases cited by Knapp on this point, *Boelens* v. *Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir. 1984), and *Skelton* v. *General Motors Corp.*, 660 F.2d 311 (7th Cir. 1981), cert. denied, 456 U.S. 974 (1984), clearly stand for the proposition that a *consumer* damaged by a seller's failure to comply with warranty obligations may sue for a violation of Federal law.

occurring in a commercial context, can never give rise to liability under G. L. c. 93A. Rather, the question of liability under G. L. c. 93A, § 11, when a breach of warranty is alleged to be an unfair or deceptive act, must be resolved by reference to general principles of liability under § 11, which are discussed in cases such as *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474-476 (1991), *Massachusetts Farm Bureau Fed'n, Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 729 (1989), and *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595-598 (1975).

Accordingly, we answer the first certified question, "no," and see no reason to answer the second question.

O'CONNOR, J. (concurring). The language of subsections (1) and (3) of 940 Code Mass. Regs. § 3.08 makes clear that those subsections apply only to transactions between business persons or entities and consumers. Subsection (2), standing alone, is less clear, but it is fair to conclude, as the court does, that that subsection also should be construed as focusing only on transactions between business persons or entities and consumers. Therefore, I agree with the court that the correct answer to the first certified question is that 940 Code Mass. Regs. § 3.08(2) does not apply to a breach of warranty in conjunction with a sale of goods by one business person or entity to another business person or entity.

I write separately only to express the view that the Attorney General would not exceed his authority under G. L. c. 93A, § 2 (*c*), were he to promulgate a regulation declaring that a breach of warranty of merchantability in connection with a sale of goods by one business person or entity to another business person or entity, whether or not intentional or negligent, constitutes an unfair and deceptive act or practice entitling the buyer to the remedies provided by G. L. c. 93A, § 11.

Merchantability, for warranty purposes, is defined by G. L. c. 106, § 2-314. Goods, to be merchantable, must "(*a*) pass without objection in the trade under the contract

description; and . . . (*d*) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved." G. L. c. 106, § 1-205. Reading §§ 2-314 and 1-205 together, trade usage is a part of every agreement unless expressly excluded. Thus, "merchantability" takes into account allowances made by trade usage and custom for minimal variations in goods contracted for. In this case, the judge found that there had been a breach of warranty, that is, that there had been a failure to perform of sufficient magnitude to be unacceptable in the trade. A regulation that would declare to be unfair an unintentional and non-negligent failure of performance of sufficient magnitude to constitute a breach of warranty, thereby shifting the risk of such a failure, including liability for attorney's fees, to the party whose performance has failed to meet trade standards, would not be unreasonable nor beyond the pale of G. L. c. 93A.

Such a regulation would not be inconsistent with, that is, repugnant to or in contradiction of, the rules, regulations and decisions of the Federal Trade Commission and the Federal courts interpreting the provisions of 15 U.S.C. § 45(a)(1) (1988). As we noted in *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 780 (1980), "States are not forbidden . . . from adopting rules more restrictive than those of the FTC." The fact that a regulation that would declare a breach of warranty an unfair act or practice, and therefore unlawful, in the circumstances set forth in the first certified question, finds no counterpart in the rules, regulations and decisions of the Federal Trade Commission and the Federal courts interpreting the Federal Trade Commission Act, does not lead to a conclusion that such a regulation would be inconsistent with that body of Federal law. The fact that there are no parallel provisions in Federal law would not establish repugnancy or contradiction. Such a regulation would be entirely consistent with the Federal Trade Commission Act and decisions interpreting it.