[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
In this case, the jury returned a verdict in favor of the plaintiffs on a claim under the Connecticut Unfair Trade Practices Act. The defendant has filed a motion to set aside the verdict advancing two separate arguments: (1) the act does not apply to the facts of this case; and (2) the claim under the act is barred by the applicable statute of limitations. The court will concentrate chiefly on the first ground.
In this case, the jury returned a verdict in favor of the plaintiffs on the claim made under the Connecticut Unfair Trade Practices Act (CUTPA). In this motion, the defendant moves the court to set aside that verdict arguing that as a matter of law CUTPA does not apply to the facts of this case. The relevant factual background for a determination of the issue raised is not complicated. Mr. Seiden had operated the liquor store he CT Page 9525 eventually sold to the plaintiffs for several years. He was during that time the sole proprietor and the day to day manager of the store buying from wholesale liquor and beer suppliers and selling to consumers. There is nothing in the record to indicate he did not run the store on a daily basis, keep the records necessary for its daily operation, or was not familiar with all financial and nonfinancial aspects of the operation of the store. The store for Mr. Seiden then was an ongoing business run for profit.
The plaintiffs were interested in buying that business and operating it themselves. Mr. Seiden was well aware of their intentions. He represented to the plaintiffs that the business was a profitable one. He obviously hoped to make a profit through his operation of the business, claimed he did so, and thus necessarily increased the value of the business which would work to his advantage if the business were to be sold. It is true that there was testimony and evidence to the effect that Mr. Seiden sold the business for personal or health reasons but there is no doubt that he tried to sell the business for a maximum profit given these circumstances.
 (a)
The claim under CUTPA was one for deceptive practices surrounding the sale. The plaintiffs' claim that Mr. Seiden misrepresented the profitability of the business and concealed facts and information by not disclosing to the plaintiffs the true financial worth of the business they were buying. They claim to have relied on the defendant's misrepresentations. Mr. Seiden was not in the business of selling liquor stores.
The defendant argued at trial and argues now that CUTPA does not apply to a one time sale of a business by a person not in the business of selling businesses.
It is of course true that a single act can constitute a CUTPA violation. Dadonna v. Liberty Mobile Home Sales, Inc.,209 Conn. 243, 257 (1988). But as pointed out in McCarthy v.Fingelly, 4 Conn. L. Rptr. 177 (Katz, J.) (1991): "The issue is not whether the litigant is required to allege more than a single transaction but whether CUTPA applies to a single private transaction by a person not employed in the business of making such transaction." This court itself has relied on this reasoning in two opinions which held that CUTPA did not apply, Wallenta v.CT Page 9526Moscowitz, 4 Conn. Ops. 900 (1998) (sale of home by the homeowner to another prior party); Larson v. Skiba Associates, Inc. v. C C Package Store, Inc., et al., 1993 WL 52482 (CUTPA claim by real estate brokerage firm against owner of liquor store for failure to pay commission upon sale of business). This court relied heavily on the reasoning of the Massachusetts Supreme Court in reaching its decision, particularly the case of Lantner v.Carson, 373 N.E.2d 873 (1978). In fact, our Supreme Court has relied on the views of the Massachusetts courts interpreting their unfair trade practices act when deciding the applicability of CUTPA. In Normand Joseph Enterprises, Inc. v. ConnecticutNational Bank, 230 Conn. 486, 521 (1994), the court said: "We have . . . repeatedly looked to the reasoning and decisions of the Supreme Judicial Court of Massachusetts with regard to the scope of CUTPA."
The defendant here relies on the foregoing cases and others and the statement of the court in McCarthy, quoted above, to argue that CUTPA should not apply to the sale of this liquor store by the defendant Seiden to these plaintiffs. Seiden was not in the business of selling liquor stores argues the defendant and the spirit and purposes of CUTPA would be violated by arming one side of this basically one time private sales transaction with the powerful weapon of CUTPA. The act was meant to protect relatively unsophisticated consumers dealing with businesses engaging in transactions with such consumers as part of their ordinary business operations. Unless the latter factual scenario exists how can the transaction that in fact occurred be said to have occurred in "trade or commerce" — the operative language of CUTPA. It is in fact true that by the application of CUTPA to this case, the plaintiffs received important advantages as was reflected in the verdict — the plaintiffs did not prevail on their common law claims of fraud which are much more difficult to prove than claims relying on similar allegations under CUTPA.
The reason why the court did not direct a verdict on the defendant's claim regarding CUTPA and left its applicability for the jury to decide is based on a series of Massachusetts Supreme Court and Appeals Court decisions which the court found to be persuasive and are an exception to the Massachusetts rule inLantner which, expansively read, holds that its unfair trade practices act does not apply to single transactions such as sales by people not involved in the business of making such transactions. The case of Begelfer, et al. v. Najarian et al.,
CT Page 9527409 N.E.2d 167 (Mass., 1980) is a Massachusetts Supreme Court case that might be said to modify or limit Lantner at its most expansive reading. That case held that the Massachusetts act applies if the "isolated transaction" occurs in a "business context." An Appeals Court case, Lynn v. Nashawaty, 423 N.E.2d 1052
(1981) applied Begelfer and held the Massachusetts unfair trade practices act in fact did apply to the sale of a stationery store by its owners and operators to a person who, upon purchase, intended to operate the store — the basis of the claim was alleged misrepresentations made by the sellers to the buyers regarding the value of inventory. The court held that the Massachusetts act applied and dealt with the defendant's argument that it did not as follows:
 "In the Begelfer case the defendant sought to be charged with violating c. 93A were pharmacists who were among several persons or groups that lent varying sums of money to the principals in a large real estate transaction. The defendants' participation was as private individuals making an isolated financial investment, and they had no role in arranging the underlying real estate transaction. It was thus held that their lending activity did not take place in a business context. The stated factors, however, suggest that the transaction involved in the case at bar is more susceptible to being characterized as occurring `in a business context' than those in Lantner and Begelfer. The sale of a business or business assets by a businessman is not the same as the sale of a home by an individual homeowner, (as in Lantner), and the defendants in the present case were fully involved in every aspect of the transaction (unlike the defendants in Begelfer), including the false representation which is the core of the alleged c. 93A violation.' In view of the position taken in the Begelfer case that an isolated transaction, one that does not take place in the ordinary course of business may constitute a violation of § 11, 59 as long as it takes place in a business context, it is difficult to avoid the conclusion reached by the finder of fact that the transaction at bar violated that section. We cannot say that the judge was required as matter of law to reach the conclusion that the sale of the stationery store did not take place `in a business context.' The question in a close case is doubtless largely one of fact, and the judge's finding here was not clearly erroneous."
Also see Rex Lumber Co. v. Acton Block Co., Inc., 562 N.E.2d 845, CT Page 9528 850 (Appeals Ct. of Mass., 1990),; Rosseau v. Gelinas, (Appeals Ct. of Mass., 1987).
The jury could have very well found that the particular sale here took place in a business context. As pointed out in Lynn:
"The sale of a business or business assets by a businessman [sic] is not the same as the sale of a home by an individual homeowner [Lantner]." Id. page 1054. As in Lynn, Seiden was involved in every aspect of the sale and the representations concerning the business and its profitability — in fact there were no other parties directly involved concerning representations about this business and its operations prior to sale. Also this was a business transaction by people who had engaged in business transactions before and the whole purpose of the transaction concerned the continuing operation of the very same business by the prospective purchaser, as the seller well knew. If theBegelfer "business context" variation of Lantner is accepted in our state, it is difficult to see how the transaction involved in this case cannot be said to have occurred in a business context. It is true that there was testimony that Mr. Seiden sold the business when he did for personal health reasons and Mr. Kay was very friendly with a brother of Mr. Seiden. But it cannot be seriously contended, giving the evidence that reading most favorable to upholding the verdict, that Mr. Seiden did not seek to maximize his profit through the sale and a main point of the claim here is that Seiden relied on the "family" connection to lull the plaintiffs into thinking that they were being made a good offer and that they could rely on Seiden's representations.
As noted in Langer, Morgan and Belt, Connecticut Unfair TradePractices Act, § 3.2, page 47 the Massachusetts courts have said that their act has as its purpose the "control" of business and thus does not apply to a strictly private sale of a private residence — people do not buy, live in or sell their homes as part of an ongoing business venture. But even small businesses are run on profit margins with the ultimate possibility if not hope that their successful operation and increased value might make their sale profitable.
Perhaps more to the point, the reason why Lantner did not apply the Massachusetts act to the sale of the home by the homeowner is functional in the sense that it bears in mind the reason why the original federal and various state unfair trade practices acts were passed in the first place. Thus, the Lantner
court at 365 N.E.2d page 806 said: "An individual homeowner who CT Page 9529 decides to sell his [sic] residence stands in no better bargaining position than the individual consumer [that is, the person who is going to by the house.]" That cannot be so easily said of the business owner and operator of even a small business who tries to sell his business to a prospective inexperienced buyer where there are no intervening third parties such as accountants and business advisors to monitor and give advice on the transaction.
Or to look at it from another perspective, is the reluctance to apply the act based on the fact that a small business is involved with an individual business person selling to other business people? If that is so, how do we formulate a principle excluding applicability of the act to such factual circumstances and still apply it to sale of a business or a portion a business involving big impersonal corporations affecting large numbers of competitors and a broad range of consumers? It cannot be done, and to say the act does not apply to the latter case is not supportable. In fact, Massachusetts formulated the "business context" rule and its test under that rule to determine whether the act should apply to a particular single transaction involving, for example, the sale of a business by the business person to another who intends to operate the business in the future. That is the best way to determine whether the act applies to a particular transaction as opposed to setting up rigid categories like an "isolated transaction" test to cover all cases. The court concludes that the "business context" test was an appropriate standard to apply to determine whether CUTPA was applicable to the facts of this case and that given the standards set forth in that test the jury could have properly concluded that the requirements of that test were factually met here.[1]
 (b)
The defendant claims the CUTPA claim is barred by the statute of limitations. This matter was gone into at length at the trial where the court stated the basis of its ruling against the defendant's claim. The court has read both post-trial briefs on this issue and agrees with the reasoning of the plaintiffs' brief. The court basically agrees that the operative binding papers, understandings and agreements between the parties date from the November closing for the store and not from the so called "contract" signed by the parties in October. The defendant's alleged fraud became operative only in November. CT Page 9530
The motion to set aside the verdict is denied.
Corradino, J.