NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12033

LIMOLINER, INC. vs.  DATTCO, INC.


Suffolk.     May 2, 2016. - September 7, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[1]


Consumer Protection Act, Businessman's claim, Unfair or
    deceptive act.  Regulation.  Attorney General.


Certification of a question of law to the Supreme Judicial
Court by the United States Court of Appeals for the First
Circuit.


Robert E. Curtis, Jr., for the plaintiff.
Christopher S. Williams for the defendant.


LENK, J.  The plaintiff, Limoliner, Inc. (Limoliner), owns

and operates a fleet of luxury motor coaches.  In 2011, it hired

the defendant, Dattco, Inc. (Dattco), to perform repair work on

one those of vehicles, verbally requesting certain specific

repairs.  The defendant recorded most of those requests in

_____

[1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

writing, but failed to write down the plaintiff's request to repair one of the vehicle's key electrical components.  The defendant then failed to make any repairs to that component.  Thereafter, the plaintiff commenced an action in the Superior Court, alleging, among other things, that, by not recording the plaintiff's verbal request in writing, the defendant had violated G. L. c. 93A, § 2 (a), as interpreted by 940 Code Mass. Regs. § 5.05(2) (1993) ("unfair or deceptive act" for automobile repair shop not to record in writing specific repairs requested by customer).  The case was removed to the United States District Court for the District of Massachusetts on the basis of diversity jurisdiction.  Following a jury-waived trial, a magistrate judge rejected the plaintiff's claim under 940 Code Mass. Regs. § 5.05(2), concluding that the regulation applied only to consumer transactions, and not to transactions where the customer is another business.  The plaintiff appealed, and the United States Court of Appeals for the First Circuit certified to us the following question:

> "Does 940 [Code Mass. Regs.] § 5.05 apply to transactions in which the customer is a business entity?"

We conclude that this regulation does apply to transactions in which the customer is a business entity and, accordingly, answer "yes" to the certified question.

1.  Background.  "We set forth below the relevant background and procedural history of the case contained in the [decision of] the First Circuit [certifying a question to this court], occasionally supplemented by undisputed information in the record."  Insurance Co. of the State of Pa. v. Great N. Ins. Co., 473 Mass. 745, 746 (2016).  See Limoliner, Inc. v. Dattco, Inc., 809 F.3d 33 (1st Cir. 2016) (Limoliner).

Limoliner is a Massachusetts corporation that operates a fleet of luxury motor coaches.  Id. at 34.  Dattco is a Connecticut corporation that repairs motor vehicles, including buses and coaches.  Id. at 34-35.  In May, 2011, representatives of Limoliner met with representatives of Dattco regarding one of Limoliner's motor coaches, which was in need of extensive repairs.  Id. at 35.  At this meeting, Limoliner verbally requested that Dattco repair, among other things, the vehicle's inverter.  The inverter is "an important component of LimoLiner's vehicles" because it converts power generated by the vehicle into a form usable by passengers, who may plug their electronic devices into onboard outlets.  Dattco agreed to make the necessary repairs, including those to the inverter.  Id. Following this meeting, Dattco generated a written list of repairs that did not include the inverter.  Id.

In August, 2011, repairs to the motor coach -- including to the inverter -- were not yet complete, and Limoliner "became

concerned about the time Dattco was taking to repair the vehicle." Id. Later that month, Dattco informed Limoliner that the vehicle was ready to be picked up, although the inverter had not yet been fixed. Id. Dattco sent Limoliner an invoice for $10,404, which Limoliner refused to pay. Id. Dattco, however, "would not return [the vehicle] without payment of its invoice."

In October, 2011, Limoliner commenced this action in the Superior Court, asserting claims for breach of contract, misrepresentation, negligence, and replevin. Id. It also asserted a claim pursuant to G. L. c. 93A, § 2 (a), alleging that Dattco had engaged in an "unfair or deceptive act[] or practice[]" by failing to record in writing, as required by 940 Code Mass. Regs. § 5.05, Limoliner's verbal request for inverter work.[2] Id. at 36. After removing the case to Federal court on the basis of diversity jurisdiction, the defendant asserted counterclaims for breach of contract and quantum meruit.[3] Id. at 35.

---

[2] Limoliner contends that Dattco violated 940 Code Mass. Regs. § 5.05 (1993) in other respects as well. Limoliner, Inc. v. Dattco, Inc., 809 F.3d 33 (1st Cir. 2016) (Limoliner). The trial judge did not make findings of fact with respect to these other claims, however, presumably because she concluded that this regulation did not apply to inter-business disputes and that findings on this issue were not necessary.

[3] Before the case was removed to the Federal court, a judge of the Superior Court ordered Dattco to return the vehicle once Limoliner deposited $10,404 with the clerk's office. Limoliner

Following a jury-waived trial, a magistrate judge found for Limoliner on the breach of contract claim.[4] She found for Dattco on Limoliner's remaining claims, as well as on the counterclaim for quantum meruit.[5] Id. at 36. In rejecting Limoliner's regulatory claim under 940 Code Mass. Regs. § 5.05, the judge concluded that the provision at issue did not apply to disputes between businesses, and that, accordingly, Limoliner was not entitled to relief. Id.

Limoliner appealed from various aspects of the decision. The United States Court of Appeals for the First Circuit affirmed the judgment, except with respect to the regulatory claim. Id. at 42. On that issue, it certified to us the question we now address.

2. Discussion. Title 940 Code Mass. Regs. § 5.05 provides, in relevant part:

"(2) It is an unfair or deceptive act or practice for a repair shop, prior to commencing repairs on a customer's

---

deposited the money, and Dattco then returned the vehicle. Limoliner, supra at 35.

[4] In light of this finding, the judge rejected Dattco's counterclaim for breach of contract. Limoliner, supra at 35-36. See Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 397 (1992) ("material breach by one party excuses the other party from further performance under the contract" [citation omitted]).

[5] After subtracting Dattco's award for quantum meruit, Limoliner was awarded a total of $25,123.89. Limoliner, supra at 36.

vehicle, to fail to record in writing the following information:

"...

"(e) The specific repairs requested by the customer, or, if the customer has not requested specific repairs, a brief description of the problems the customer has encountered with the vehicle which caused him to bring it to the repair shop."

This regulation was promulgated by the Attorney General pursuant to G. L. c. 93A, § 2, which forbids "unfair or deceptive acts or practices in the conduct of any trade or commerce," G. L. c. 93A, § 2 (a), and authorizes the Attorney General to "make rules and regulations," G. L. c. 93A, § 2 (c), "identify[ing] particular business practices as falling within the[] scope" of the statute's prohibition. Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 771 (1980).

As amended in 1972, the protections provided by G. L. c. 93A, § 2 (a), apply both to transactions between consumers and businesses, and to transactions involving "persons engaged in trade or commerce . . . with other persons also engaged in trade or commerce." Manning v. Zuckerman, 388 Mass. 8, 12 (1983), citing G. L. c. 93A, § 11. The amended statute also expressly authorizes the Attorney General to promulgate rules regulating such transactions. See G. L. c. 93A, § 11 (businesses protected against any "practice declared unlawful by . . . regulation" [emphasis supplied]). Thus, it is

undisputed that, if the Attorney General so intended, 940 Code Mass. Regs. § 5.05 would apply to inter-business transactions. The question is whether the Attorney General actually intended that it be applied in this way. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737, 745 (1994) (Knapp) (central issue in interpreting Attorney General's regulation is what "the Attorney General had in mind"). For the reasons that follow, we conclude that 940 Code Mass. Regs. § 5.05 was intended to apply to inter-business transactions.

"The general and familiar rule is that a [regulation] must be interpreted according to the intent of [the officer or agency responsible for its promulgation] ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Knapp, supra at 744-745, quoting Industrial Fin. Corp. v. State Tax Comm'n, 367 Mass. 360, 364 (1975).

As with statutes, we begin our analysis of the regulation by looking to its language. See Associated Subcontractors of Mass., Inc. v. University of Mass. Bldg. Auth., 442 Mass. 159, 164 (2004) ("analysis begins with the statutory language, 'the principal source of insight into Legislative purpose'" [citation omitted]); Knapp, supra at 744 (we analyze "[l]anguage in a

regulation[] like language in a statute").  The regulation provides that "[i]t is an unfair or deceptive act or practice for a repair shop, prior to commencing repairs on a customer's vehicle, to fail to record in writing the . . . specific repairs requested by the customer" (emphasis supplied).  See 940 Code Mass. Regs. § 5.05(2).  By its terms, then, the regulation applies only to repairs made on vehicles belonging to "customers."  The question before us is whether a "customer" must be a consumer, or also may be another business.

The regulation's own language indicates the answer to this question.  The word "customer" is defined in the first section of the Attorney General's motor vehicle regulations as "any person who . . . seeks to have repairs . . . performed by a repair shop on a motor vehicle" (emphasis supplied), 940 Code Mass. Regs. § 5.01 (1993), and, in that same section, "person" is defined as "an association, a corporation, an institution, a natural person, an organization, a partnership, a trust or any legal entity."  Id.  Connecting these definitions, it is apparent that the term "customer" refers to "corporations" and other "legal entities," which, by definition, cannot be consumers, see Black's Law Dictionary 382 (10th ed. 2014) (consumer is "a natural person who uses products for personal rather than business purposes" [emphasis supplied]), and which are most often created for business purposes.  See id. at 415

(corporation is "[a]n entity [usu[ally] a business] having authority under law to act as a single person").

That the "customer" protected by the regulation may be a business emerges, also, from the regulation's definition of "customer" as a person who seeks "repairs . . . on a <u>motor vehicle</u>" (emphasis added). See 940 Code Mass. Regs. § 5.01. The term "motor vehicle" is defined as having "the same meaning as that set forth in [G. L.] c. 90, § 1," 940 Code Mass. Regs. § 5.01, and, in that statute, "motor vehicle" refers to an array of vehicles -- "bus[es]," "mobile construction crane[s]," "tandem unit[s]," "tractor[s]" -- whose uses ordinarily are commercial in nature rather than personal. See G. L. c. 90, § 1. Indeed, a "bus" -- the type of vehicle at issue here -- is explicitly defined in commercial terms. See <u>id</u>. (bus is "any motor vehicle operated upon a public way . . . for the carriage of passengers for hire").

Of significance, also, is that another provision in the Attorney General's motor vehicle regulations contains a clause specifically limiting its applicability to "motor vehicles which are purchased primarily for personal, family or household purposes." See 940 Code Mass. Regs. § 5.04 (1993). No such clause is employed here.[6] Given that the Attorney General knew

---

[6] Similarly, other of the Attorney General's regulations -- outside the motor vehicle context -- have clauses limiting their

how to limit motor vehicle regulations to consumer transactions, and in fact had done so in another context, we assume that the failure to do so here "was purposeful."  See Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 659-660 (2006).  See also Bishop v. TES Realty Trust, 459 Mass. 9, 13 (2011) (where "Legislature demonstrated that it knew how to" implement particular distinction, "we will not impute . . . an intent" to create such distinction "[w]here the Legislature has not done so" [citation omitted]).

Our reasoning in Knapp, supra, supports this analysis. There, we held that a provision from a different section[7] of the Attorney General's regulations promulgated under G. L. c. 93A, § 2 (c), did not apply to inter-business transactions.  See Knapp, supra at 738; 940 Code Mass. Regs. § 3.08(1) (1993).  We based this conclusion, in large part, on the fact that the provision at issue "was promulgated [in 1971,] when G. L. c. 93A protected consumers, but not persons engaged in trade or

applicability to "natural persons."  See, e.g., 940 Code Mass. Regs. § 7.03 (2012) (debtor "means a natural person"); 940 Code Mass. Regs. § 8.03 (2008) (borrower "means any natural person"); 940 Code Mass. Regs. § 30.03 (2011) (customer "means any natural person").

[7] The provision at issue in Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994) (Knapp), appears in 940 Code Mass. Regs. §§ 3.00 (2014), the sections concerning "Customer Protection:  General Regulations," while the one at issue here appears in 940 Code Mass. Regs. §§ 5.00 (1993), the "Motor Vehicle Regulations."

commerce, from unfair or deceptive acts or practices." See
Knapp, supra at 744. Here, by contrast, the motor vehicle
regulations -- among them the provision at issue -- were
promulgated approximately four years after the Legislature gave
the Attorney General the power to regulate inter-business
transactions under G. L. c. 93A. See 940 Code Mass. Regs.
§ 5.07 (1980) (provisions took effect, variously, in 1976 and
1977); St. 1972, c. 614 (applying statute's protections to
businesses).

In addition, we noted in Knapp, supra, that the regulation
at issue in that case "use[d] the term 'consumer' to denote the
persons protected by [its] provisions." Here, the term
"consumer" is not used. The regulation refers only to
"customers," a term defined to include corporations and other
legal entities that, by definition, cannot be consumers.[8] 940
Code Mass. Regs. §§ 5.01, 5.05. See Black's Law Dictionary 382,
supra (consumer is "a natural person" [emphasis supplied]).

The defendant argues, however, that at least one aspect of
our reasoning in Knapp militates for an opposite conclusion. In

---

[8] The defendant notes that the regulation in Knapp, supra at
744 n.6, also used the term "customer," in addition to
"consumer," and that the terms were used "apparently
interchangeably." On this basis, the defendant contends that
the two should be considered interchangeable here as well. This
argument is unpersuasive. Here, unlike the regulation at issue
in Knapp, only the term "customer" is used. There is no mention
of the word "consumer." See 940 Code Mass. Regs. § 5.05.

that case, we found significant that the regulation "concern[ed] matters generally involved in consumer transactions." Id. at 744. "These matters include[d], for example, . . . a prohibition on charging for repairs which the customer has not authorized, or representing, untruthfully, that the goods being inspected are in such a dangerous condition that they should not be used prior to repair." Id. Because the regulation at issue here concerns similar matters, the defendant contends that it, like that in Knapp, was intended to apply only to consumer transactions.[9] See 940 Code Mass. Regs. § 5.05(1) (unlawful to state that "a vehicle is in a dangerous condition or that a customer's continued use of a vehicle may be harmful to the

_____

[9] Indeed, some of the provisions in 940 Code Mass. Regs. § 5.05 are couched in language resembling that in the Knapp regulation. Compare, e.g., 940 Code Mass. Regs. § 3.08 (1993) (section entitled "Repairs and Services Including Warranties and Service Contracts" declares "unfair and deceptive," among other things, to "[r]epresent that repairs are indicated to be necessary when such is not a fact") with 940 Code Mass. Regs. § 5.05 (section entitled "Repairs and Services" declares "unfair and deceptive," among other things, statement "[t]hat repairs are necessary or desirable when such is not a fact").

The defendant notes one additional similarity: that the Knapp regulation, like the one here, broadly defines "person" to include corporations and legal entities. 940 Code Mass. Regs. § 3.01 (2014). The defendant does not make clear, though, what significance it attributes to this point. The definition of "person" in our regulation is important only because "customer" is defined to mean "any person." 940 Code Mass. Regs. § 5.01. In the Knapp regulation, by contrast, none of the operative terms ("customer" and "consumer") were defined as "persons," see 940 Code Mass. Regs. § 3.01, and it therefore did not matter, in our construction of those terms, what "person" meant.

customer or others when such is not a fact"); 940 Code Mass. Regs. § 5.05(3) (unlawful "to charge a customer for any repairs" not authorized by customer).

This argument is unavailing. That the regulation in Knapp, supra at 744, "concern[ed] matters generally involved in consumer transactions" was significant only in the absence of indications from the regulation's language of its intended scope. See id. at 744-745 (regulation lacked "language denoting the persons protected thereunder," and "contain[ed] no language suggesting that it was meant to apply to a broader class of persons or interests"). Here, by contrast, the regulation contains language "denoting the persons protected thereunder," and indicating that "it was meant to apply to a broader class of persons or interests." See id. Thus, while the regulation's provisions plainly are relevant to consumer transactions, its protections were not limited to that context.[10]

_____

[10] For this reason, we are not persuaded by the defendant's contention that the regulation's use of an authorization form written in the first person, or its reference to customers as "him or her," implies intent to restrict its applicability only to "individual consumers/customers." See 940 Code Mass. Regs. § 5.05(3)-(4). The language of the regulation may have been written with consumers in mind, but that does not mean it was intended only for consumers. Moreover, with respect to the form, both its first person language and its use of colloquial terms, such as "car," might simply reflect an attempt to provide an easily-intelligible document -- one that would be just as helpful to businesses, who might not be versed in legal or automotive jargon, as to consumers.

We note, in this regard, that the provision at issue here appears in the Attorney General's "Motor Vehicle Regulations," 940 Code Mass. Regs. §§ 5.00 (1993), while the one at issue in Knapp appears in the "Customer Protection: General Regulations," 940 Code Mass. Regs. §§ 3.00 (2014).[11]  This is significant

_____

[11] The defendant cites various cases and treatises suggesting that the Attorney General's regulations pursuant to G. L. c. 93A apply only to consumers, but these authorities address only the general customer protection regulations codified in 940 Code Mass. Regs. §§ 3.00, and not the motor vehicle regulations in 940 Code Mass. Regs. §§ 5.00.  See Baker v. Goldman, Sachs & Co., 771 F.3d 37, 56-57 (1st Cir. 2014) (appears from Knapp decision that other regulations in 940 Code Mass. Regs. §§ 3.00 may not apply to inter-business transactions); In re First New England Dental Centers, Inc., 291 B.R. 229, 241 (D. Mass. 2003) (assuming, based on Knapp, that 940 Code Mass. Regs. § 3.16 does not apply "to business to business transactions").  While the defendant cites one treatise that makes the broad statement "that none of the attorney general's regulations will be applied to" business disputes "unless and until the attorney general promulgates regulations dealing specifically with" such matters, this statement, too, was made in the context of a discussion of the general customer protection regulations in 940 Code Mass. Regs. §§ 3.00.  See Golann, Evolution of Chapter 93A:  National and Local Authority, in Chapter 93A Rights and Remedies 1-6 (Mass. Cont. Legal Educ. 3d ed. 2014) (discussing our decision in Knapp construing "the general regulations" and citing unpublished Federal case dealing with provision of general customer protection regulations).

Also, even with respect to the general customer protection regulations in 940 Code Mass. Regs. §§ 3.00, there is some disagreement whether they are to be applied only to consumer transactions.  See Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 58 (1st Cir. 2010) (assuming that 940 Code Mass. Regs. § 3.16 applies to business disputes); J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 144 (D. Mass. 2005) (concluding that 940 Code Mass. Regs. § 3.16 applies to business disputes); Lily Transp. Corp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179, 187 (2005) (applying 940 Code Mass. Regs. § 3.16[2] to business disputes).

because, as construed in Knapp, the general regulations in 940 Code Mass. Regs. §§ 3.00 were intended to counteract disparities in bargaining power and sophistication often present in transactions between businesses and consumers.  See Knapp, supra at 738 (940 Code Mass. Regs. § 3.08[2] did not apply to transaction "entered into by persons engaged in the conduct of trade and commerce having equal bargaining power and business acumen").  On this basis, we concluded that, where those disparities are generally less likely to exist -- as in transactions between two businesses -- the Attorney General may not have intended those regulations to apply.  Knapp, supra at 745 ("Attorney General had in mind protection for consumers" only).

In the motor vehicle context, however, the specialized nature of the product is such that even an otherwise-sophisticated business might be at an informational disadvantage.  This is especially so if the business is not, as here, a commercial bus company with some automotive expertise, but, for example, a retail shop looking to repair its delivery van.  The Attorney General might reasonably have decided -- as the regulation's language indicates he did -- that the policies behind the motor vehicle rules necessitated that they be applied even beyond the consumer context.

3. <u>Conclusion</u>. Concluding that 940 Code Mass. Regs. § 5.05 applies to transactions in which the customer is a business entity, we answer the certified question, "Yes."

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the question certified, and will also transmit a copy to each party.